IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

**KEITH MARTIN MOLINEAUX, JR.,**

    **Plaintiff,**

v.                                                                  Case No. 2:14-cv-12270

**JUDGE CHARLES M. VICKERS,
PROSECUTOR EDWARD KORNISH,
JASON GRUBB, SIDNEY H. BELL,
T.S. PACK, SHARON ALLEN,
SUE ANN BRYANT, T.G. WHITE,
DENNIS FRANCIS, C.R. LANE,
STEPHEN KING, JOHN PAULEY,
and G.D. WILLIAMS,**

    **Defendants.**

## PROPOSED FINDINGS AND RECOMMENDATION

On March 13, 2014, Keith Martin Molineaux, Jr. (hereinafter "Plaintiff" or "Molineaux") who is proceeding *pro se*, filed the instant Complaint (ECF No. 2) and an Application to Proceed Without Prepayment of Fees and Costs (ECF No. 1). This matter is assigned to the Honorable Thomas E. Johnson, United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

This is the sixth civil action filed by Molineaux in this federal court, and the fourth case involving his attempts to seek the production of the "chain of custody" concerning evidence collected and allegedly tested by the West Virginia State Police Crime Laboratory in connection with his criminal prosecution in the Circuit Court of McDowell County, West Virginia, on first degree murder, burglary and conspiracy charges. Molineaux has a

pending state habeas corpus proceeding concerning his criminal conviction (*Molineaux v. McBride*, Case No. 04-C-221 (McDowell Cty. Cir. Ct.)).[1]

## STANDARD OF REVIEW

Pursuant to the provisions of 28 U.S.C. § 1915(e)(2)(B), the court is obliged to screen each case in which a plaintiff seeks to proceed *in forma pauperis*, and must dismiss the case if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B). Pursuant to 28 U.S.C. § 1915A, a similar screening is conducted where a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A. This screening is done prior to consideration of an Application to Proceed without Prepayment of Fees and Costs, and notwithstanding the payment of any filing fee. A "frivolous" case has been defined as one which is based on an indisputably meritless legal theory. *Denton v. Hernandez*, 504 U.S. 25 (1992). A "frivolous" claim lacks "an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

Pro se complaints are held to less stringent standards than those drafted by attorneys, and the court is obliged to construe liberally such complaints. However, in *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007), the Supreme Court observed that a case should be dismissed for failure to state a claim upon which relief can be granted if, viewing the well-pleaded factual allegations in the complaint as true and in the light most

---

[1] Molineaux's prior civil actions filed in this court sought the production of investigative reports and the "chain of custody" related to the evidence collected in his state criminal case and the enforcement of state court subpoenas seeking the same – relief which this court is not authorized to grant, given the current procedural posture of his state court habeas corpus proceedings. Molineaux's two other civil actions concerned conditions of confinement at the Mount Olive Correctional Complex and were ultimately voluntarily dismissed by Molineaux.

favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." While the complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* at 555.

The Supreme Court elaborated on its holding in *Twombly* in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), a civil rights case. The Court wrote:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. [*Twombly*, 550 U.S.] at 555, 127 S. Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted). Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.*, at 556.
>
> * * *
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

129 S. Ct. at 1949-50.

Because the plaintiff's Complaint fails to state a claim upon which relief can be granted, the defendants have not been served with process and should not be required to appear or defend this matter.

### **FACTUAL BACKGROUND AND PLAINTIFF'S INSTANT CLAIMS**

Molineaux was convicted in the Circuit Court of McDowell County of two counts of first degree murder, burglary and conspiracy and received two life sentences without

3

mercy. The charges arose out of the 2001 shooting of John and Kim Stepp in their mobile home. Molineaux was implicated by other witnesses as the shooter, which he disputes. Evidence suggested that the Stepps were shot at close range.

According to the Complaint, shortly after the murders, search warrants were executed at two residences in Bluefield, West Virginia, as well as a vehicle belonging to Harriett Brown, Molineaux's girlfriend. Evidence, including the clothing and shoes allegedly worn by Molineaux on the night of the crimes, was collected by various law enforcement officials. Molineaux's current claims surround issues of whether all of the evidence collected by law enforcement, including his clothing and shoes, was tested by the West Virginia State Police Crime Laboratory and whether any exculpatory test results were withheld from the defense.

The Complaint alleges that, as early as November of 2001, Molineaux and his defense counsel requested disclosure of investigative reports and what Molineaux refers to as the "chain of custody" concerning the evidence seized in the investigation of these crimes. The extensive narrative in the Complaint explains in detail the alleged difficulties Molineaux encountered in obtaining discovery of this evidence in his criminal case and specifically asserts that the prosecution withheld test results, refused to hand over the chain of custody, and refused to allow Molineaux to complete his own testing of items both before and during trial. Molineaux further asserts that the State continues to withhold such evidence in his on-going state habeas corpus proceedings. Molineaux further repeatedly alleges that the clothing seized by the State was returned to his girlfriend at the conclusion of the trial. He also suggests that certain test results concerning that evidence were falsified. (ECF No. 2 at 5-24).

> The statement of claim contained in the present Complaint states as follows:
>
> Defendants refuse Plaintiff access to biological evidence for DNA testing. Plaintiff is seeking access because in his case the identity of the perpetrator of the crime was a key issue in trial and the testing would establish his actual innocence. The opportunity to access testing of DNA evidence of that which was tested and its results withheld and the testing of evidence never tested is crucial. Defendants ha[ve] withheld key exculpatory evidence during Plaintiff's trial which is why testing is needed. DNA testing has proven time and again to be a powerful tool that promotes justice and certainty. Defendants refuse to allow Plaintiff to examine copy of original chain of custody, test evidence and withheld exculpatory, material and impeaching evidence and information at trial.

(ECF No. 2 at 25, 28). Molineaux seeks the appointment of counsel to represent him in this matter, a jury trial, a complete investigation of the West Virginia State Police Crime Lab, and he requests that the defendants be required to cover all of his costs and fees. He further requests that the following documents be produced to the presiding District Judge for review to determine correctness and completeness prior to being turned over to him:

> All case submission forms, evidence receipts, test results, correspondences, evidence and testing logs, memoranda, bench notes and chain of custody worksheets, and any other type of documentation of any nature or whatsoever stored in any form or medium whatsoever, including but not limited to hard copies, carbon copies, photocopies, microfilm or microfiche, e-mails, and electronic data and computer information however stored and whether stored on hard drive, CD-roms, floppy discs, or otherwise, pertaining to or relating in any nature or manner whatsoever to any evidence receive[d] or tested or witnessed by West Virginia State Police and any of its agents (including but not limited to test of marijuana, clothing, cigarette butt, box of bullets, tangible evidence and human beings for DNA, blood spatter and gunshot residue from or relating in any manner to Case No. 01-F-134, 135/01-F-125 to be given to the Judge "two copies" in this case and the Judge after seeing it's not false and is true and correct send copies to both Plaintiff and Plaintiff's counsel.

(*Id.* at 26-27). Molineaux further requests that the District Court "compel the defendants to follow original court order and hand over exculpatory evidence to test, court order

5

dated March 11, 2013 (enclosed)."[2]  (*Id.* at 27).  Molineaux also seeks an injunction requiring DNA testing of evidence in the defendants' custody.  (*Id.*)

## ANALYSIS

Molineaux's Complaint fails to state any claim upon which relief can be granted by this federal court.  This civil action is brought as a Complaint under 42 U.S.C. § 1983, which essentially seeks a federal court order requiring state officials to produce evidence for use in an on-going state habeas corpus proceeding and to require DNA and other forms of testing on such evidence.  Molineaux also appears to be asserting a claim under *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny, claiming that the State withheld exculpatory evidence during his state court criminal proceedings.

In *Dist. Attorney's Office for the Third Judicial Dist. v. Osborne*, 557 U.S. 52 (2009), the Supreme Court held that the ruling in *Brady* does not extend to the post-conviction context.  Thus, the Court further held that a convicted criminal defendant has no freestanding substantive due process or other constitutional right to obtain post-conviction access to the State's evidence for DNA testing.  Therefore, the plaintiff's actual *Brady* claim must be addressed via habeas corpus proceedings.  Because the plaintiff's state court habeas corpus proceedings are on-going, he has not exhausted that issue in the state courts or shown that the state post-conviction procedures are inadequate.  Therefore, it is inappropriate for this federal court to address any *Brady*-based claim herein.  Likewise, any claim that the State presented false evidence must be addressed in habeas corpus proceedings and not the instant section 1983 proceeding.  These claims necessarily call into question the validity of Molineaux's conviction.  Because Molineaux

---

[2]  The undersigned notes that the March 11, 2013 Order referenced by Molineaux is not attached to his Complaint and has not otherwise been provided to this court.  The Complaint document refers to a number of other exhibits that have likewise not been provided to this court.

has not exhausted his available state court habeas corpus remedies concerning these claims, this federal court cannot presently grant him any relief thereon. *See* 28 U.S.C. § 2254(b)(1)(A).

However, in *Skinner v. Switzer*, 131 S. Ct. 1289 (2011), which is cited in Molineaux's Complaint (ECF No. 2 at 3), the Supreme Court clarified that, where a convicted prisoner seeks only <u>access</u> to DNA evidence, which may ultimately prove to be exculpatory, inculpatory or inconclusive, and does not necessarily imply the invalidity of his conviction or seek speedier release, the prisoner may pursue such access in a section 1983 action, rather than habeas corpus, but <u>only if he can demonstrate that the state post-conviction procedures for such access are "fundamentally inadequate to vindicate the substantive right provided</u>." *Skinner*, 131 S. Ct. at 1293 (citing *Osborne*, 557 U.S. at 69, 129 S. Ct. at 2320). In essence, *Skinner* establishes the limited jurisdiction of a federal court to grant access to DNA testing under the theory of a procedural due process challenge to the state procedures themselves.

*Skinner* held that "a state-court decision is not reviewable by lower federal courts, but a statute or rule governing the decision may be challenged in a federal action." 131 S. Ct. at 1298. Thus, the challenge must be to the constitutionality of the underlying state statute granting access to DNA testing, and not the state court's decision concerning testing itself, which would be barred by the *Rooker-Feldman* doctrine. *See Alvarez v. Attorney Gen. for Fla.*, 679 F.3d 1257 (11th Cir. 2012) (while *Switzer* permits a facial challenge to DNA access procedures, challenges to specific state court decisions denying

7

access to DNA testing are not reviewable by lower federal courts under *Rooker-Feldman*).[3]

Based upon *Skinner*, the undersigned has examined the State of West Virginia's procedures for post-conviction DNA testing in the state courts and the plaintiff's allegations concerning his efforts to obtain such testing. West Virginia has a state statute governing the right to post-conviction DNA testing, found in West Virginia Code § 15-2B-14, which provides in pertinent part that "a person convicted of a felony currently serving a term of imprisonment may make a <u>written motion before the trial court that entered the judgment of conviction for performance (DNA) testing</u>." W. Va. Code § 15-2B-14(a). If the movant is indigent, he may also request appointment of counsel to prepare his motion. W. Va. Code § 15-2B-14(b). The motion for DNA testing must be verified under penalty of perjury and must do the following:

(A) Explain why the identity of the perpetrator was, or should have been, a significant issue in the case.

(B) Explain in light of all the evidence, how the requested DNA testing would raise a reasonable probability that the convicted person's verdict or sentence would be more favorable if the results of DNA testing had been available at the time of conviction.

(C) Make every reasonable attempt to identify both the evidence that should be tested and the specific type of DNA testing sought.

(D) Reveal the results of any DNA or other biological testing previously conducted by either the prosecution or defense, if known.

---

[3] The Supreme Court made clear in *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983) and *Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923), that "federal courts are divested of jurisdiction 'where entertaining the federal claim should be the equivalent of an appellate review of the state court order.'" *Friedman's Inc. v. Dunlap*, 290 F.3d 191, 196-98 (4th Cir. 2002)(quoting *Jordahl v. Democratic Party of Va.*, 122 F.3d 192, 202 (4th Cir. 1997)); *Plyler v. Moore*, 129 F.3d 728, 733 (4th Cir. 1997) (*Rooker-Feldman* applies when the federal action "essentially amounts to nothing more than an attempt to seek review of [the state court's] decision by a lower federal court"). More recently, the Supreme Court reiterated that the *Rooker-Feldman* doctrine applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005).

8

    (E)    State whether any motion for testing under this section has been filed previously and the results of that motion, if known.

W. Va. Code § 15-2B-14(c)(1). Notice of the motion must be provided to the prosecuting attorney in the county of conviction and, if known, the governmental agency or laboratory that holds the evidence sought to be tested. W. Va. Code § 15-2B-14(c)(2).

If the state court finds that the evidence was subject to prior DNA or other forensic testing, it shall order the party who conducted the prior testing to provide all parties and the court with access to the lab reports, underlying data and notes prepared in connection with such testing. W. Va. Code § 15-2B-14(d). The decision to have any hearings on such motion is discretionary. W. Va. Code § 15-2B-14(e).

The state court shall grant the motion for DNA testing if it determines that <u>all</u> of the following have been established:

    (1)    The evidence to be tested is available and in a condition that would permit the DNA testing requested in the motion;

    (2)    The evidence to be tested has been subject to a chain of custody sufficient to establish it has not been substituted, tampered with, replaced or altered in any material aspect;

    (3)    The identity of the perpetrator of the crime was, or should have been, a significant issue in the case;

    (4)    The convicted person has made a prima facie showing that the evidence sought for testing is material to the issue of the convicted person's identity as the perpetrator of or accomplice to, the crime, special circumstance, or enhancement allegation resulting in the conviction or sentence;

    (5)    The requested DNA testing would raise a reasonable probability that, in light of all the evidence, the convicted person's verdict or sentence would have been more favorable if DNA testing results had been available at the time of conviction. The court in its discretion may consider any evidence regardless of whether it was introduced at trial;

    (6)    The evidence sought for testing meets either of the following conditions:

        (A)    The evidence was not previously tested;

        (B)    The evidence was tested previously, but the requested DNA test would provide results that are reasonably more discriminating and probative of the identity of the perpetrator or accomplice or have a reasonable probability of contradicting prior test results;

    (7)    The testing requested employs a method generally accepted within the relevant scientific community;

    (8)    The evidence or the presently desired method of testing DNA were not available to the defendant at the time of trial or a court has found ineffective assistance of counsel at the trial court level;

    (9)    The motion is not made solely for the purpose of delay.

W. Va. Code § 15-2B-14(f).

If the state court grants the motion for DNA testing, the court shall identify the specific evidence to be tested and the specific DNA technology to be used by a lab located in the state. Furthermore, the test results must be fully disclosed to the person requesting the testing and the prosecuting attorney and, if ordered by the court, the lab shall also produce the underlying data and notes. W. Va. Code §§ 15-2B-14(g) and (h).

Molineaux does not assert that these procedures are inadequate or flawed. Taking the allegations in the Complaint as true, as the court must, Molineaux has not sufficiently alleged or demonstrated his full compliance with the state statutory procedures.[4] Rather, Molineaux's allegations appear to be challenging the conduct of the prosecution and law enforcement agents which, under the current procedural posture, would only be

---

[4] Molineaux alleges that he filed a "Motion for Testing of Evidence" on or about May 24, 2012; however, he does not specify whether that motion addressed all of the requisite criteria of the state post-conviction DNA testing statute or whether and how the Circuit Court ruled on that motion.

10

actionable in habeas corpus, or the prior decisions of the Circuit Court, which is barred by the *Rooker-Feldman* doctrine.

The presiding District Judge previously dismissed an analogous civil action seeking an injunction requiring the State of West Virginia to turn over all DNA evidence for testing, where the plaintiff did not demonstrate that the post-conviction procedures under West Virginia Code § 15-2B-14 were inadequate to vindicate his substantive rights. *See Nelson v. Sparks*, 2:09-cv-01316, 2010 WL 519826, *3 (Feb. 12, 2010). Similarly, the plaintiff's Complaint does not specifically challenge the validity of the West Virginia post-conviction DNA testing statute and he has not met the burden of demonstrating a procedural due process violation thereunder. Therefore, *Skinner* is inapposite here and this court lacks subject matter jurisdiction to adjudicate Molineaux's claims.

Moreover, to the extent that Molineaux's Complaint seeks other types of testing and the production of documents related to prior testing, this federal court lacks jurisdiction to order a state court to require such post-conviction testing or the production of such documentation. Those requests essentially seek mandamus relief, which this court has no authority to grant because a federal writ of mandamus will not lie to compel a state officer to perform a duty owed to a petitioner. *See* 28 U.S.C. § 1361. Accordingly, the undersigned proposes that the presiding District Judge **FIND** that there is no jurisdiction for this United States District Court to issue a writ of mandamus directed to the defendants.

## RECOMMENDATION

As noted above, in *Twombly* and *Iqbal*, the Supreme Court held that a case should be dismissed for failure to state a claim upon which relief can be granted if, viewing the well-pleaded factual allegations in the Complaint as true and in the light most favorable

to the plaintiff, the Complaint does not contain "enough facts to state a claim to relief that is plausible on its face." For the reasons stated herein, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff's Complaint does not contain any allegations that could plausibly give rise to a present entitlement to relief in this court. Accordingly, the undersigned further proposes that the presiding District Judge **FIND** that the plaintiff's Complaint fails to state a claim upon which relief can be granted. Therefore, pursuant to the provisions of 28 U.S.C. § 1915(e)(2)(B) and 1915A, it is respectfully **RECOMMENDED** that the presiding District Judge **DISMISS** the plaintiff's Complaint (ECF No. 2), and all requests for relief contained therein, and **DENY** the plaintiff's Application to Proceed without Prepayment of Fees and Costs (ECF No. 1), with a waiver of the applicable filing fee.

The plaintiff is notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnson, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the plaintiff shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S.

140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to Judge Johnston.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to the plaintiff.

December 22, 2016

                                                  Dwane L. Tinsley
                                                  United States Magistrate Judge